METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Richard Jacobson, Respondents-Respondents.

Court of Appeals

*No. 92-2010-FT.  Submitted on briefs November 3, 1992.—Decided December 9, 1992.*

(Also reported in — N.W.2d —.)

199

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Katherine L. Charlton,* of *Shneidman, Myers, Dowling & Blumenfield* of Milwaukee.

On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* assistant attorney general and *David C. Rice,* assistant attorney general.

On behalf of the respondent-respondent, Richard Jacobson, the cause was submitted on the brief of *August E. Fabyan, Jr.* of *Haight & Fabyan* of Hartland.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J.   The Metropolitan Milwaukee Fair Housing Council (MMFHC) appeals from a circuit court order affirming a decision of the Labor and Industry Review Commission (LIRC) that Richard Jacobson's newspaper advertisement for the rental of his property did not state or indicate any discrimination. We affirm the order.

The controlling facts are not disputed. The MMFHC is a private nonprofit corporation which seeks to assist its clients in locating acceptable housing. To that end, the MMFHC monitors and reviews housing advertisements in Milwaukee area newspapers and incorporates such information into its computer listing of available housing. The MMFHC then uses this information to assist its clients who seek housing. If, in the

course of this activity, the MMFHC discovers suspected discriminatory practices, it refers such matters by complaint to the Equal Rights Division (ERD) of the Department of Industry, Labor and Human Relations.

Richard Jacobson owns rental living quarters in Oconomowoc, Wisconsin. On January 16, 1990, Jacobson placed an advertisement for the rental of this property in a local newspaper. The advertisement read in relevant part:

> Fully Winterized COTTAGE, 2 bedrooms, ideal for couple. Not suitable for pets or children. Available February 1 or 15. Security deposit required.. . .

Based upon this advertisement, a MMFHC representative filed a complaint against Jacobson with the ERD. The complaint alleged, *inter alia*, that Jacobson's advertisement stated "a preference or limitation based on marital status in violation of the Wisconsin Open Housing Law." Jacobson filed a *pro se* response denying the allegations stating, in part, that the phrase "ideal for couple" was intended to convey that the size of the rental quarters was "[l]arge enough for a couple (2) people." Jacobson's response also recited that he had, in fact, rented the quarters to a single person.

On June 13, 1990, the ERD issued an Initial Determination that probable cause existed "[t]o believe that [Jacobson] violated the Wisconsin Open Housing Act, sec. 101.22, Stats., by publishing or communicating a statement or indication of discrimination in connection with housing." Jacobson then hired counsel. Conciliation efforts proved unsuccessful and the matter went to a hearing before an Administrative Law Judge (ALJ).

Following the hearing, the ALJ issued a final decision and order determining that Jacobson had violated sec. 101.22, Stats. (1989–90), by: (1) publishing or com-

municating a statement or indication of discrimination in connection with housing; and (2) interfering with the exercise or enjoyment of a right under the Wisconsin Open Housing Act. The ALJ fined Jacobson $200 and awarded the MMFHC reasonable attorney's fees of $1481.25.[1] The ALJ also ordered Jacobson to file a compliance report with MMFHC's attorney within thirty days detailing the action he had taken to comply with the order.

Jacobson appealed to LIRC. Based upon its review of the record, LIRC determined that Jacobson did not intend to discriminate when he placed the advertisement and that an ordinary reader would not have understood the advertisement to state or indicate discrimination with regard to the unit in question. LIRC dismissed MMFHC's complaint. MMFHC sought judicial review. The circuit court upheld the LIRC decision. MMFHC further appeals to us.

*Sauk County v. WERC*, 165 Wis. 2d 406, 413-14, 477 N.W.2d 267, 270-71 (1991), sets out three alternative standards of review upon judicial review of an administrative agency decision. MMFHC argues that we should apply the "no weight" or *de novo* standard to the LIRC decision because the issue is one of first impression in which the agency has no special experience or expertise

---

[1] The parties do not advise as to the basis upon which actual reasonable attorney's fees were granted. We assume the award was made pursuant to the language of sec. 101.22(4)(d), Stats. (1989–90), which authorizes the examiner to "order such action by the respondent as will effectuate the purpose of this section." Equivalent language in sec. 111.36(3)(b), Stats. (1975), of the Fair Employment Act has been held to authorize an award of actual reasonable attorney's fees. *Watkins v. LIRC*, 117 Wis. 2d 753, 765, 345 N.W.2d 482, 488 (1984).

in determining the issue.[2] LIRC contends that under any of the *Sauk County* standards, the agency ruling passes muster. Since we agree, we will assume without deciding that the "no weight/*de novo*" standard applies.

The issue is whether Jacobson's advertisement "states or indicates any discrimination in connection with housing" within the meaning of the Wisconsin Open Housing Act, sec. 101.22, Stats.[3] More specifically, the question is whether Jacobson's advertisement discriminated on the basis of marital status, contrary to sec. 101.22(1m)(as).[4]

---

[2] The other two standards of review are: (1) the "great weight" or "rational basis" standard where the agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, and where a legal question is intertwined with factual determinations or with value or policy determinations, or where the agency's interpretation and application of the law is of long standing; and (2) the "due weight" or "great bearing" standard where the agency's decision is "very nearly" one of first impression. *Sauk County v. WERC*, 165 Wis. 2d 406, 413-14, 477 N.W.2d 267, 270-71 (1991).

[3] Section 101.22(2), Stats., provides in part:

DISCRIMINATION PROHIBITED. It is unlawful for any person to discriminate:

. . ..

(d) By publishing, circulating, issuing or displaying or causing to be published, circulated, issued or displayed, any communication, notice, advertisement or sign in connection with the sale, financing, lease or rental of housing, which states or indicates any discrimination in connection with housing.

[4] Section 101.22(1m)(as), Stats. (1989–90), provides:

"Discriminate" and "discrimination" mean to segregate, separate, exclude or treat any person or class of persons unequally because of sex, race, color, handicap, sexual orientation, religion, national origin, sex or marital status of the person maintaining a household, lawful source of income, age or ancestry. It is intended that the

In *Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir.), *cert. denied,* 112 S.Ct. 81 (1991), the federal court of appeals interpreted a similar provision of the federal Fair Housing Act of 1968 which prohibited publication of "any . . . advertisement, with respect to the sale or rental of a dwelling that indicates any preference . . . based on race.. . ." 42 U.S.C. sec. 3604(c) (1988). The *Ragin* court adopted the "ordinary reader" test which inquires whether the advertisement suggests to an ordinary reader that a particular class is preferred or "dispreferred" for the housing in question. *Ragin,* 923 F.2d at 999. *Ragin* equates the "ordinary reader" with the law's traditional "reasonable person" who "is neither the most suspicious nor the most insensitive of our citizenry." *Id.* at 1002.

We find the *Ragin* test persuasive and we adopt it for purposes of Wisconsin law. Applying this test, we conclude that Jacobson's advertisement does not state or indicate discrimination to the ordinary reader. The advertisement recites Jacobson's opinion that the property is best suited to the needs of a couple. This language does not "disprefer" single persons. Rather, it simply tells all potential renters—whether one, two or more—that Jacobson believed the property best suited for a couple. We see such information as helpful to—not discriminatory against—a potential renter who, after reading the advertisement, will decide whether to pursue the rental opportunity.

Our inquiry is not limited to whether the effect of the advertisement is to dissuade some potential renters from applying. Most advertisements will tempt some and deter others. Rather, the correct inquiry is whether such

factors set forth herein shall be the sole bases for prohibiting discrimination under sub. (2).

dissuasion is the product of any discriminatory statement or indication in the advertisement. MMFHC's reading lacks an objective perspective and, as a result, is the product of the suspicious—not the ordinary—reader.

The MMFHC argues that the conventional meaning of the word "couple" does not embrace a single person. We agree. However, this argument misses the focus of Jacobson's advertisement. *Ragin* holds that "the touchstone is . . . the message." *Id.* at 1000. Here, the focus of the message is the suitability of the property to the renter—not the acceptability of the renter to the owner.

*By the Court.*—Order affirmed.

ANDERSON, J. (*concurring*). I write separately to express my opinion that the complaint filed by the Metropolitan Milwaukee Fair Housing Council (MMFHC) impedes rather than encourages nondiscriminatory housing in the state of Wisconsin. In addition, such trifling complaints may well reduce available rental housing by having a chilling effect on potential landlords who would rather hold property off the market than risk the expense of defending against a complaint over innocuous and inoffensive advertisement.

The open housing policy of the state of Wisconsin is set forth in sec. 101.22(1), Stats. (1989–90):

> It is the intent of this section to render unlawful discrimination in housing. It is the declared policy of this state that all persons shall have an equal opportunity for housing regardless of sex, race, color, sexual orientation . . . handicap, religion, national origin, sex or marital status of the person maintaining a household, lawful source of income, age or ancestry . . ..

This is more than a laudable goal; it is a clear expression that the people of this state will not tolerate discrimination in housing. However, when any organization or person pursues complaints that are based upon nothing more then the phrase ideal for couple, they trivialize the Open Housing Law.

Without any investigation, MMFHC filed a complaint against Jacobson after reading his advertisement in a local newspaper. The complaint alleged that the advertisement stated "a preference or limitation based on marital status in violation of the Wisconsin Open Housing Law" and that the advertisement constituted "intimidation, interference, [and] coercion." The record is barren of any evidence that any person or member of the MMFHC called Jacobson to inquire about his intent in placing the advertisement. The record is bereft of any evidence that before or after filing the complaint any probe was conducted of Jacobson's rental practices. The record lacks any evidence that any single person or unmarried couple was dissuaded from renting the cottage because of a belief that Jacobson would only rent to a married couple. Finally, the allegation that the advertisement constituted "intimidation, interference, [and] coercion" can only be a figment of the imagination because there is no evidence that remotely leads to such a conclusion.

In fact, the record is rich in evidence that Jacobson did not intend to dissuade singles and nonmarried couples from renting the cottage. The record is filled with uncontradicted evidence that Jacobson did not practice discriminatory rental practices. Before placing the advertisement, Jacobson rented the cottage to an unmarried couple and a teenager; after placing the advertisement, Jacobson rented the cottage to a single person.

As disturbing as the filing of an unsubstantiated complaint is MMFHC's failure to give Jacobson a courtesy call to tell him that they believed that his advertising violated the Open Housing Law. Rather than seeking voluntary compliance with MMFHC's interpretation of the law, MMFHC sought enforcement action with its attendant expenses and fee-shifting mechanism.

And, after an initial determination that there was probable cause to believe that the advertisement constituted discrimination based upon marital status, MMFHC's conciliation offer was not for voluntary compliance. Rather, MMFHC demanded Jacobson pay MMFHC $250 for damages[1] and training and $250 for attorney's fees. It is reasonable to conclude that using a "big stick" to compel compliance with the Open Housing Law will be counterproductive. Such heavy-handed enforcement will do nothing but inflame a landlord, like Jacobson, who has no intent to limit the availability of a rental unit to a particular type or class of tenant. Voluntary compliance cannot be achieved in these cases by subjecting the landlord to unsubstantiated complaints and needless attorney's fees and expenses.

The elimination of discriminatory housing, whether it is in the metropolitan Milwaukee area or Barron county, must continue to be of foremost concern to the people of Wisconsin. The legitimate efforts of individuals and organizations to search for and eradicate actual discrimination in housing advertisements, rental and sale practices must be encouraged. The administrative agencies and courts, charged with enforcing the Open Housing Law, must continue to impose every sanction available when presented with an actual case of housing

---

[1] The only documented damage in the record is that unspecified staff members of MMFHC expended one hour investigating the advertisement before filing the complaint.

discrimination. Likewise, the administrative agencies and courts must discourage those complaints that have no basis in fact and only trivialize genuine efforts to end discrimination.

The goal of affordable and adequate housing for every citizen of this state can only be achieved by reasonable efforts.