RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MIAMI VALLEY FAIR HOUSING CENTER, INC.,
     *Plaintiff-Appellant/Cross-Appellee*,

    v.

THE CONNOR GROUP,
     *Defendant-Appellee/Cross-Appellant*.

Nos. 12-3284/3314

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:10-CV-83—Walter H. Rice, District Judge.

Argued: March 5, 2013

Decided and Filed: August 5, 2013

Before: MARTIN and GILMAN, Circuit Judges; FOWLKES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Diane E. Citrino, THACKER MARTINSEK LPA, Cleveland, Ohio, for Appellant/Cross-Appellee. Stephen A. Watring, DUNLEVEY, MAHAN & FURRY, Dayton, Ohio, for Appellee/Cross-Appellant. Teresa Kwong, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Diane E. Citrino, Brian D. Heskamp, THACKER MARTINSEK LPA, Cleveland, Ohio, for Appellant/Cross-Appellee. Stephen A. Watring, Amy C. Mitchell, David M. Rickert, DUNLEVEY, MAHAN & FURRY, Dayton, Ohio, for Appellee/Cross-Appellant. Teresa Kwong, Dennis J. Dimsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Stephen M. Dane, RELMAN, DANE & COLFAX PLLC, Washington, D.C., Rachel K. Robinson, Columbus, Ohio, for Amici Curiae.

_____

[*] The Honorable John T. Fowlkes, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

---

**OPINION**

---

BOYCE F. MARTIN, JR.  This case is about the application of the Fair Housing Act's section 3604(c) and Ohio Revised Code section 4112.02(H)(7) to a Craigslist advertisement for a one-bedroom apartment.  The Connor Group placed an ad on Craigslist for an apartment in Dayton, Ohio, advertising a "great bachelor pad for any single man looking to hook up."  The Miami Valley Fair Housing Center brought suit against the Connor Group for violating the Fair Housing Act and Ohio's housing statute. The case went to trial and a jury found that the ad did not violate either statute.  Miami Valley now appeals the district court's denial of their Rule 50 motion for a directed verdict and their Rule 59 motion for a new trial.  The Connor Group cross-appeals the district court's decision denying its motion for an award of attorney's fees.  We **AFFIRM** the district court's denial of Miami Valley's Rule 50 motion and the Connor Group's motion for attorney's fees, but **REVERSE** the district court's denial of Miami Valley's Rule 59 motion for a new trial.

I.

Miami Valley is a fair-housing organization "whose mission is to promote fair housing and eliminate housing discrimination in Montgomery County and surrounding counties in Ohio."  The Connor Group owns and manages around 15,000 rental units throughout the United States, including around 1,900 in the Dayton, Ohio area.  In May 2009, Rachel Underwood, a listing agent with the Connor Group, posted the following ad on Craigslist:

**599/1br – Great Bachelor Pad! (Centerville)**

* * *

Our one bedroom apartments are a great bachelor pad for any single man looking to hook up.

This apartment includes a large bedroom, walk in closet, patio, gourmet kitchen, washer dryer hook up and so much more. . . .

On March 5, 2010, Miami Valley filed a complaint in the Southern District of Ohio alleging that this ad, and thirteen additional Connor Group ads, violated the Fair Housing Act's section 3604(c) and Ohio's Revised Code section 4112.02(H)(7).[1] Miami Valley argued that the bachelor pad ad was facially discriminatory to families and women. The case advanced to a three-day jury trial. After Miami Valley presented its case, Miami Valley and the Connor Group both made Rule 50 Motions for a directed verdict. The district court denied both motions, and the case went to the jury. The court provided the following jury instruction, which explained the standard to be used in determining whether the ad was discriminatory:

> In deciding whether Defendant's advertisement indicates a preference, limitation, specification, or discrimination based on sex or familial status, you must determine how an "ordinary reader" would interpret the advertisement. The "ordinary reader" is one that is neither the most suspicious nor the most insensitive person in our society.
> The relevant question is whether the advertisement would suggest to an "ordinary reader" that a person of a particular sex or with a particular familial status is preferred or disfavored for the housing in question. Keep in mind that most advertisements will tempt some and discourage others. The question is not whether the particular advertisement discourages some potential renters from applying. The appropriate question is whether such discouragement is the product of any discriminatory statement or indication in the advertisement.
> If an ordinary reader who is a member of a protected class would be discouraged from answering the advertisement because of some discriminatory statement or indication contained therein, then the fair housing laws have been violated.
> Focus on the message being conveyed by the advertisement at issue in this matter. Ask yourselves whether the message focuses on the

---

[1]Miami Valley later voluntarily dismissed its claims regarding the other Connor Group ads on the eve of trial.

> suitability of the property to the renter, which is permissible, or whether it impermissibly focuses on the suitability of the renter to the owner.

The Connor Group emphasized these jury instructions during closing arguments by enlarging the jury-instruction language as an exhibit. The Connor Group went on to make the following argument:

> Suitability. Ideal is a form of suitability. Shoes might be suitable for you or they may be ideal for you. It's quality. Okay? In this ad what relates to suitability? It's the ideal. Right? It's ideal. Okay. So it's ideal. Is it an ideal man or an ideal apartment? So it focuses on the suitability of the property. Up there, suitability of the apartment, an ideal apartment for the renter which in this case is a single man. So the ad focuses upon the suitability of the apartment or the property for the renter who is a single man. The judge is going to instruct you which is permissible. Which is permissible. . . . Does it say: I prefer a single man. We want a single man? Obviously not. There's no preference here. It just says it's ideal. It's focusing upon the suitability of the property for somebody.

The jury deliberated for two hours and ultimately found in favor of the Connor Group.

Miami Valley renewed its motion for judgment as a matter of law under Rule 50 and further moved for a judgment notwithstanding the verdict or for a new trial under Rule 59(e) because of alleged deficiencies in the jury instructions. The Connor Group filed a bill of costs and motion for attorney's fees. The district court denied both parties' motions. Responding to Miami Valley's Rule 50 motion, the district court held that the Connor Group ad was not facially discriminatory and thus that a directed verdict was not warranted. In holding that the ad was not facially discriminatory, the district court relied on a Wisconsin Court of Appeals case from 1992, *Metropolitan Milwaukee Fair Housing Council v. Labor and Industry Review Commission,* 496 N.W.2d 159, 162 (Wis. Ct. App. 1992). The district court further held that the jury instructions were not deficient as a whole and also denied the Connor Group's motion for attorney's fees. Both parties appealed.

II.

"We have an independent obligation to ensure jurisdiction over a case," *In re Cannon*, 277 F.3d 838, 852 (6th Cir. 2002), and so, before we consider the parties' arguments, we consider whether Miami Valley, a fair housing organization, has standing to sue.

Standing under the private-right-of-action provision of the FHA "extend[s] to the full limits of Article III." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). To prove Article III standing, Miami Valley must allege: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Miami Valley's mission is to "promote fair housing and eliminate housing discrimination," and it alleges that it "had to divert its resources, its staff time and energy to identify the ad and then to bring the ad to the attention of the appropriate authorities," thereby suffering a harm of $5,292.15 in costs. The Supreme Court and this Circuit have found that a drain on an organization's resources, as alleged by Miami Valley, constitutes a concrete and demonstrable injury for standing purposes. *Havens*, 455 U.S. at 379; *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc., a Div. of Gannett Co., Inc.*, 943 F.2d 644, 646 (6th Cir. 1991) (holding that HOME had alleged a concrete injury because it had to "devote resources to investigate and negate the impact of [advertisements]" allegedly violating the FHA); *accord Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27–29 (D.C. Cir. 1990) (holding plaintiffs had standing because their alleged injury, the depletion of resources which were diverted to enforcement actions surrounding the advertisements, was concrete and fairly traceable). This injury is fairly traceable to the Connor Group advertisements, which are at issue in this case, and Miami

Valley's requested relief will redress its injury.  Therefore, we find that Miami Valley has standing to bring this suit.

III.

We review de novo a district court's denial of a renewed motion for judgment as a matter of law under Rule 50(b).  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (citing *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007)).  "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Id.* (internal quotation marks omitted).

Section 3604(c) of the Fair Housing Act, 42 U.S.C.A. § 3604 (West 2013), makes it unlawful

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation or discrimination.

The Fair Housing Act's language is purposely broad and "the statute and regulations create no fixed and immutable rules to determine whether an advertisement is discriminatory." *Hous. Opportunities Made Equal, Inc.*, 943 F.2d at 647.  Subjective intent to discriminate is not required to establish a violation of section 3604.  This Court, in *Housing Opportunities Made Equal*, adopted the Second Circuit's "ordinary reader" standard first discussed in *Ragin v. New York Times Company*, 923 F.2d 995, 999 (2d Cir. 1991) [hereinafter *Ragin I*].  *Id.* (citing *Ragin I*, 923 F.2d at 999).  Under this standard, an ad violates the statute if it suggests to an ordinary reader that a particular group is "preferred or dispreferred" for housing because of a prohibited factor listed in the statute.  *Ragin I*, 923 F.2d at 999.  We must consider how "an ordinary reader" or

"reasonable reader" would read the advertisement and the ordinary reader is "'neither the most suspicious nor the most insensitive of our citizenry.'" *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 n.4 (7th Cir. 1995) (quoting *Ragin I*, 923 F.2d at 1002); *Hous. Opportunities Made Equal, Inc.*, 943 F.2d at 646; *Spann*, 899 F.2d at 29. The "reader does not apply a mechanical test . . . ." *Ragin I*, 923 F.2d at 1002.

Before continuing with our analysis, we feel it imperative to clarify that we do not believe that this ordinary-reader standard requires an advertisement to "discourage" an ordinary reader of a particular protected class. Panels from both the Second Circuit and the Seventh Circuit have interpreted the Fair Housing Act's use of the word "preference" to be synonymous with "discourage." *Ragin I*, 923 F.2d at 999–1000 (noting that "we read the word 'preference' to describe any ad that would discourage an ordinary reader of a particular race from answering it"); *Jancik*, 44 F.3d at 556. But the *Ragin I* panel did not explain how it made the leap from the term "preference" to "discourage," a leap that has no textual support in the statute. *Ragin I*, 923 F.2d at 999–1000. Furthermore, the *Jancik* panel copied the *Ragin I* language verbatim, but provided no additional insight into the relationship between the terms "preference" and "discourage." *Jancik*, 44 F.3d at 556.

We believe that using "discourage" could create First Amendment concerns by creating an overly broad restriction on speech. For example, advertisements that do not indicate a preference and merely describe a property, such as "walk-up, no elevators" or "very small apartment," could potentially "discourage" an ordinary reader of a protected class from considering it. The Second Circuit itself avoided using its own "discourage" language in the second *Ragin* case, *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) [hereinafter *Ragin II*] (considering only whether a particular group was "preferred or dispreferred"). Additionally, other than the Seventh Circuit, this Circuit and other circuits have declined to adopt the "discourage" language

and instead have stayed true to the statute's "preference" language. *E.g. United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972)*; Hous. Opportunities Made Equal, Inc.*, 942 F.2d at 646. We decline to incorporate the discourage language into our ordinary-reader analysis.

Thus, in assessing the motion for a directed verdict, we consider only whether an ordinary reader would find that the advertisement indicates a preference and not whether the ad would discourage the reader. We do not believe that the Connor Group advertisement violates the Fair Housing Act as a matter of law. To find that the advertisement violates the statute requires that we make inferences because the ad could be interpreted in multiple ways. For example, an ordinary reader could find that the ad, while badly worded, shows no indication that women or families would be unwelcome, but merely expresses an opinion about who would find the apartment appealing. In the alternative, an ordinary reader may find that the ad clearly suggests a preference for single men in the apartment complex. Such inferences are best left to the jury to consider. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions."). Because reasonable minds could differ, we decline to hold that the ad violated section 3604(c) as a matter of law.

Miami Valley also alleges that the bachelor pad ad violates the Ohio housing statute, Ohio Revised Code section 4112.02(H)(7). The Ohio statute mirrors the Fair Housing Act, but differs in one respect: it forbids advertisements that express "any preference, limitation, *specification*, or discrimination." Ohio Rev. Code Ann. § 4112.02(H)(7) (West 2013) (emphasis added). There is some non-binding precedent in this Circuit and in the Ohio Courts of Appeals that indicates Ohio courts look to analogous federal statutes to determine if section 4112.02 has been violated. *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 890–91 (N.D. Ohio 2001) ("The

Court notes, and the parties do not dispute, that both federal and state fair housing claims may be analyzed using federal case law. . . . Consequently, the Court may rely upon the federal case law under the FHA . . . as it relates to Plaintiffs' claims under Ohio's equivalent fair housing statute in § 4112"); *Ohio Civil Rights Comm'n v. Harlett*, 724 N.E.2d 1242, 1244–45 (Ohio Ct. App. 1999) ("When interpreting R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance."); *Hughes v. Miller*, 909 N.E.2d 642, 647 (Ohio Ct. App. 2009) (noting that "Ohio's anti-retaliation law[, Ohio Rev.Code § 4112.02(I),] has a broader scope than Title VII because it does not limit its coverage to people in an employer-employee situation . . . but the standard for proving retaliatory discrimination in the employment context is the same under Ohio law as it is under Title VII"); *Wooten v. Columbus, Div. of Water*, 632 N.E.2d 605, 610 (Ohio Ct. App. 1993) ("When interpreting R.C. Chapter 4112, it is not inappropriate to look to analogous federal statutes such as the Rehabilitation Act of 1973, Section 708 *et seq.,* Title 29, U.S.Code and the Americans with Disabilities Act of 1990, 104 Stat. 327, Section 12101, Title 42, U.S.Code, as amended, R.C. 4112.02 appearing to confer equal or greater rights on a handicapped employee.").

Here, the Ohio statute's addition of the word "specification" arguably broadens the scope of the statute beyond that covered by the Fair Housing Act. However, we believe that under an ordinary-reader standard, as it is applied to a Fair-Housing-Act analysis, an ordinary reader could find multiple ways to interpret the advertisement as it related to the Ohio statute's non-specification requirement. On the one hand, an ordinary reader could find the ad had a specification based upon familial status and sex when it "specified" a single man. Or, an ordinary reader could find that while the ad discusses a single man, it does not specify who can actually live in the apartment. For

these reasons, we also decline to find that the ad violated the Ohio housing statute, and we affirm the denial of the motion for a directed verdict.

IV.

We next consider whether the jury instructions warrant reversal.  "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) (citation omitted).  We cannot look at only certain parts of the instructions "in isolation; we must consider the charge as a whole." *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir. 2000).

Miami Valley argues that the district court implemented the wrong legal standard when instructing the jury about the "ordinary reader" standard from *Metropolitan Milwaukee Fair Housing Council v. Labor and Industry Review Commission*, 496 N.W.2d 159, 162 (Wis. Ct. App. 1992).

As discussed in section III, *supra*, the proper standard for considering a violation of the Fair Housing Act is an ordinary-reader standard.  The jury instructions referred to the ordinary-reader standard, but supplemented that standard with language gleaned from *Metropolitan Milwaukee*.  In that case, the Wisconsin Court of Appeals considered whether an ad for a "COTTAGE, 2 bedrooms, ideal for couple. Not suitable for pets or children" violated the Wisconsin Open Housing Act, section 101.22, which prohibited an ad that "states or indicates any discrimination in connection with housing." *Metro. Milwaukee Fair Hous. Council,* 496 N.W.2d at 160; Wis. Stat. Ann. § 101.22(2) (1989–1990).  The Wisconsin Court of Appeals adopted the Second Circuit ordinary-reader standard set out in *Ragin I* and further held that "the correct inquiry is whether such dissuasion is the product of any discriminatory statement or indication in the advertisement." *Id*. at 204–205.  The court said that "the focus of the message is the

suitability of the property to the renter–not the acceptability of the renter to the owner." *Id.* at 205.

The district court borrowed directly from *Metropolitan Milwaukee* in its jury instructions. While the first paragraph of the instructions describes the *Ragin I* ordinary-reader standard, the next three paragraphs pull primarily from the language in *Metropolitan Milwaukee.* The court told the jury that "[t]he question is not whether the particular advertisement discourages some potential renters from applying. The appropriate question is whether such discouragement is the product of any discriminatory statement or indication in the advertisement." The district court further guided the jury by saying "[a]sk yourselves whether the message focuses on the suitability of the property to the renter, which is permissible, or whether it impermissibly focuses on the suitability of the renter to the owner."

The district court's reliance on *Metropolitan Milwaukee* was misplaced because *Metropolitan Milwaukee* does not represent the law of this Circuit, nor does it properly apply the ordinary-reader standard. To begin, not only is *Metropolitan Milwaukee* an opinion from a state appellate court in Wisconsin, but since its release in 1992, it has not been cited by any other court, including Wisconsin courts, as precedent. Furthermore, *Metropolitan Milwaukee* is not a case about the Fair Housing Act, but instead interprets Wisconsin's state housing statute. The Wisconsin Open Housing Act was a much narrower statute that prohibited only actual discrimination, unlike the Fair Housing Act, which broadly prohibits any "preference, limitation, or discrimination . . . ." Wis. Stat. Ann. § 101.22(1) (1989–1990); 42 U.S.C.A. § 3604 (West 2013).

In addition, while the Wisconsin court allegedly adopted the *Ragin I* ordinary-reader standard, instructing the jury that it is permissible for an ad to focus on the suitability of the property to the renter perverts the ordinary-reader standard. Under such a suitability analysis, many ads would be permissible that in fact violate the Fair

Housing Act. Consider, for example, the following advertisements: "Great house for people who like only white neighbors;" "Great school district with all-white schools;" "Property not suitable for families." Each of these examples would satisfy the suitability standard as expressed in *Metropolitan Milwaukee* and this case's jury instruction because they focus only on the suitability of the property to the renter; however, they indicate an impermissible preference to an ordinary reader and violate the Fair Housing Act.

We hold that the legal standards expressed in the jury instructions were erroneous, but to reverse we must find the erroneous jury instructions to be "confusing, misleading, and prejudicial.'" *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 273–274 (6th Cir. 2009). As discussed above, the district court's instruction told the jury to "[a]sk yourselves whether the message focuses on the suitability of the property to the renter, which is permissible, or whether it impermissibly focuses on the suitability of the renter to the owner." We believe that a jury, applying the instructions, would have no option but to find for the Connor Group because the advertisement's description of "a great bachelor pad for any single man looking to hook up" clearly focuses only on the suitability of the apartment to the renter, a single man. In fact, we believe that under the suitability standard as articulated in the instructions, this advertisement would be so clearly permissible that it could have been decided as a matter of law.

Furthermore, Connor Group emphasized the suitability part of the instructions in its closing arguments by using a demonstrative exhibit, thereby further magnifying an erroneous standard. We hold that the jury instructions were erroneous and prejudicial enough to warrant reversal.

V.

Connor Group argues that the district court erred in overruling Connor's motion for attorney's fees without providing for a hearing. We review a district court's decision on a motion for attorney's fees under an abuse-of-discretion standard. *Garner v.*

*Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 634 (6th Cir. 2009).  For a defendant to prevail on a motion for attorney's fees, the district court must find that "'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'"  *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005) (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994)).  The standard is particularly high for civil rights actions, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998), because "'[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction,'" and it "'must be limited to truly egregious cases of misconduct.'"  *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 438 (6th Cir. 2009) (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

An "award to prevailing defendants will depend on the factual circumstances of each case." *Brooks v. Ctr. Park Assocs.*, 33 F.3d 585, 587 (6th Cir. 1994) (quoting *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985)).  It is important to consider the evidence that the plaintiffs had going into trial, and what happened during litigation, including whether the plaintiff's case survived a motion for a directed verdict.  *Id.*; *Lowery*, 586 F.3d at 438.

Here, the district court did not abuse its discretion in denying Connor Group's motion for attorney's fees.  Miami Valley's case survived a motion for a directed verdict after it had presented its case at trial.  Furthermore, before filing a complaint, Miami Valley brought an administrative complaint to the Ohio Civil Rights Commission, which investigated and found the ad had probably violated the law.  Miami Valley did not bring a frivolous or unreasonable claim, so we affirm the district court's ruling on this issue.

VI.

For the foregoing reasons, we **AFFIRM** the district court's denial of Miami Valley's Rule 50 motion for a directed verdict as well as the denial of the Connor

Group's motion for attorney's fees,  but **REVERSE** the district court's denial of Miami Valley's Rule 59 motion for a new trial and **REMAND** for further proceedings.