RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0268p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

FAIR ELECTIONS OHIO; CURE-OHIO; THE AMOS PROJECT,

        *Plaintiffs-Appellees*,

     *v.*

JON HUSTED, in his official capacity as Secretary of State of Ohio; MIKE DEWINE, in his official capacity as Attorney General of Ohio,

        *Defendants-Appellants*.

No. 14-4007

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:12-cv-00797—S. Arthur Spiegel, District Judge.

Decided and Filed: October 24, 2014

Before: COLE, Chief Judge, ROGERS and COOK, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Ryan L. Richardson, Zachery P. Keller, Sarah E. Pierce, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellants. Patrick M. Quinn, BRUNNER QUINN, Columbus, Ohio, David A. Singleton, Ngozi V. Ndulue, Pamela H. Thurston, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, for Appellees.

     ROGERS, J., delivered the opinion of the court, in which COOK, J., joined. COLE, C.J., (pp. 8–11), delivered a separate dissenting opinion.

1

_____

**OPINION**

_____

ROGERS, Circuit Judge.   This case concerns whether an organization conducting voter outreach has standing to challenge the deadline for requesting an absentee ballot, on the theory that this deadline—6:00 P.M. on the Friday before Election Day—prevents people jailed after the deadline and held through Election Day from exercising their right to vote.  In order to sue in federal court, an organizational plaintiff must show a concrete and particularized injury in fact to itself or its members.  Plaintiffs have not done so here.  Further, limits on third-party standing prevent the organizational plaintiffs in this case from asserting the rights of third-parties.

Under Ohio law, jail confinement does not negate voter eligibility. Persons who are in jail on pending charges have the right to register and vote.  Ohio Rev. Code § 3509.08(A).   Only convicted felons in state custody lose the right to vote, and only during the pendency of their incarceration.  Ohio Rev. Code § 2961.01(A).

Ohio law provides two basic methods by which a registered voter can cast a ballot: by voting in person at an assigned location on Election Day, or by using one of the "absent voter's ballot procedures" found in Ohio Rev. Code § 3509.01 *et seq*.  Ohio law and practice provide for five methods of absentee voting.  First, one can vote remotely by mail.  Second, one can vote early, in person, at the board of elections or other designated location.  The final three ways apply to those in special circumstances, that is, overseas uniformed military, those subject to "disability or confinement," or those in "unforeseen hospitalization."

For conventional absentee voting, a request must be received by hand delivery before 6:00 P.M. on the Friday before Election Day, or by mail before noon on the Saturday before Election Day at the relevant board of elections.  Ohio Rev. Code § 3509.03.  Those in special circumstances, including those confined under a sentence for a misdemeanor or awaiting trial on a felony or misdemeanor, can submit ballot applications up to 90 days before an election.  Ohio Rev. Code § 3509.08(A).   After receiving and verifying confined voter ballot applications, boards of elections send two-person teams to obtain the ballots from those confined at nursing

homes, private homes, hospitals, and jails. While such teams visit nursing homes as long as a month before the election, boards of elections can and do wait until Election Day to send a team to the county's jail or jails, to avoid obtaining absentee ballots from persons who would have been released before Election Day.

The practical outcome of the current procedure is that persons jailed after 6:00 P.M. on the Friday before Election Day who are not released in time to vote in person on Election Day and who have not already voted using one of the other absent voter ballot procedures are unable to vote.

Separate from the ordinary absentee ballot procedures, those who cannot visit the polls in person because the voter or the voter's minor child is "confined in a hospital as a result of an accident or unforeseeable medical emergency" can qualify for a special voting procedure if an absentee ballot application is delivered to the relevant board of elections by 3:00 P.M. on Election Day. Ohio Rev. Code § 3509.08(B)(1). A late hospital voter can request that the absentee ballot be entrusted to a family member for delivery. Otherwise, the board must send a two-person team of board employees representing the two major political parties. Ohio Rev. Code § 3509.08(B). No corresponding provision exists for persons confined in jail on Election Day because of an arrest or misdemeanor conviction occurring after 6:00 P.M. the preceding Friday.

Plaintiffs initiated this suit on October 15, 2012 by filing a complaint and a motion for a temporary restraining order. Plaintiffs alleged that treating late-jailed electors differently from late-hospitalized electors violates the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, § 2 of the Voting Rights Act, and the Seventeenth Amendment. They requested declaratory and injunctive relief. After an oral hearing on the motion, the district court determined that at least one of the plaintiffs—The AMOS Project—had standing to sue because it would be "required to divert its resources to retraining its volunteers and informing its members and constituents of the risks attendant with getting arrested during the weekend prior to the election." The district court then found that the plaintiffs were not likely to succeed on any of their claims and that equitable factors weighed against issuing a temporary restraining order. The plaintiffs did not appeal, and the parties proceeded with discovery.

The parties then filed cross-motions for summary judgment.  In a ruling on September 16, 2014, the district court again found that AMOS had standing to sue.  The court noted that standing had already been found when the plaintiffs filed for a temporary restraining order.  The court found that the evidence produced on summary judgment showed that "AMOS learned of the disenfranchisement of late-jailed voters late in the game, and therefore weren't able to modify voting rights placards or print new supplemental materials," and that "AMOS used its small staff in voter engagement training to teach election volunteers that a pre-election arrest could result in the loss of the chance to vote."  According to the district court, these showings of injury were enough for AMOS to have standing.  The court then granted summary judgment for the plaintiffs on all of their claims.

Although the district court's constitutional analysis does not appear sufficient to warrant the injunction, we need not address the merits.  AMOS lacks standing because it has not shown that it has suffered an injury in fact.  To establish standing, AMOS must show an injury in fact, fairly traceable to the defendant's conduct, that is likely to be redressed by a favorable decision from the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation."  *Id.* at 561.  AMOS made two evidentiary showings on summary judgment, neither of which establishes an injury in fact.  That AMOS's placards and supplemental materials failed to contain a full and accurate description of the years-old late-jailed electors issue is not an Article III injury, and even if it were, it is not fairly traceable to the State, only to AMOS's ignorance of the law.  Further, it is not an injury to instruct election volunteers about absentee voting procedures when the volunteers are being trained in voting procedures already, as AMOS Executive Director Paul Graham conceded that the training was part of a single regularly scheduled meeting.  And even if this instruction were an injury, any likely redress by this court would simply substitute a different procedure, which AMOS must teach its volunteers instead.

The only other basis for standing offered by the plaintiffs is that the law compelled AMOS to divert limited resources to address the issue of late-jailed electors, but the plaintiffs

have not supported this argument with specific facts apart from the two evidentiary showings.[1] *Lujan* teaches that "mere allegations" are insufficient to establish jurisdiction; at summary judgment, plaintiffs must set forth "specific facts." 504 U.S. at 561. If such specific facts are in the record, the plaintiffs have not pointed them out on appeal. Instead, plaintiffs rest on the conclusions reached by the district court, content to quote broadly from the district court's denial of a temporary restraining order and grant of summary judgment. These conclusions, taken separately or together, do not amount to a diversion of resources and do not constitute Article III injuries.

At bottom the Article III standing limitation prevents a plaintiff from bringing a federal suit to resolve an issue of public policy if success does not give the plaintiff (or one of an associational plaintiff's members) some relief other than the satisfaction of making the government comply with the law. The relief need not be monetary, of course. It may for instance be aesthetic, or informational. If a voter can get to the polls more easily by winning the lawsuit, or a political party can marshal its forces more effectively by winning its lawsuit, that ought to be enough for Article III. But if the armchair observer decides that the government is violating the law, and decides to stop it by suing, that is not enough. This limit would be eviscerated if an advisor or organization can be deemed to have Article III standing merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to change the law. Plaintiffs in this case have demonstrated no more than this.

The cases cited by the Plaintiffs in support of their diversion of resources theory of standing are accordingly distinguishable. In *Crawford v. Marion County Election Board*, the

---

[1]The dissent's reliance on *Havens Realty Corporation v. Coleman* is misplaced. 455 U.S. 363 (1982). First, in *Havens*, the plaintiff organization sought damages, not an injunction, *id.* at 378; damages are a classic basis for standing. And as the Supreme Court later held in *City of Los Angeles v. Lyons*, plaintiffs who have standing to bring a damages claim do not necessarily have standing to bring a claim for injunctive relief. 461 U.S. 95 (1983). Second, the injury to the plaintiff organization in *Havens* was a distinct and palpable injury to a broad legal right intrinsic to the organization's activities. In *Havens*, the right under the Fair Housing Act was "an enforceable right [of any person] to truthful information concerning the availability of housing," 455 U.S. at 373—a right that cuts to the core of an organization that "provide[d] counseling and referral services for low-and moderate-income homeseekers," *id.* at 379. The misinformation provided by the *Havens* defendants, i.e. a lie told to black renters, including a member of the organization, that no rental units were available, directly interfered with the organization's ability to provide truthful counseling and referral services. The present case does not involve false information. For similar reasons, the dissent's reliance on *Miami Fair Housing Center, Inc. v. Connor Group*, 725 F.3d 571 (6th Cir. 2013), also an FHA suit for damages, *id.* at 576, is misplaced.

Seventh Circuit concluded that the Democratic Party had standing to challenge an Indiana voter ID law. 472 F.3d 949 (7th Cir. 2007). The law injured the Democratic Party by preventing and discouraging Democratic Party members and supporters from voting. *Id*. at 951. In *Florida State Conference of the NAACP v. Browning*, the Eleventh Circuit found that the NAACP and other organizations had standing to challenge a Florida law that required voter registration information to match information in state databases. 522 F.3d 1153 (11th Cir. 2008). The Eleventh Circuit concluded that the organizations had standing on behalf of their members. *Id*. at 1163–64. Under the law, if the information did not match, the voter-members would have to take additional steps to correct the error, such as providing documentary proof that the state databases were incorrect or filing an amended voter registration form. *Id.* at 1157. In *Browning*, the NAACP and other organizations had standing because at least some of their approximately 20,000 members would have had their voter registration applications rejected due to a mismatch. *Id.* at 1163. Unlike in *Crawford* and *Browning*, there is simply no indication that any of AMOS's members will be a voter affected by the challenged law. Instead, the law purportedly injures AMOS by hampering AMOS's abstract social interest in maximizing voter turnout. Harm to abstract social interests cannot confer Article III standing. *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 716–17 (6th Cir. 1995).

Even if AMOS were to demonstrate it has Article III standing, it would confront the additional barrier of the long-recognized limit on plaintiffs asserting the rights of third-parties.[2] The plaintiffs are organizations and cannot vote; instead they assert the right to vote of individuals not even presently identifiable. A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). There are exceptions to this limit—such as where a "close relationship" exists between the party asserting the right and the party possessing it or where a "hindrance" exists to the possessor's ability to protect the right, *id*. at 129–30—but none applies here. The relationship between AMOS and the persons whom it seeks to help—

---

[2]Husted does not specifically raise the limit on third-party standing, but this court has previously held that such limits on standing may be raised by the court. *Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994), amended (May 8, 1995).

unidentified, future late-jailed voters—does not resemble the close relationship of the lawyer-client or doctor-patient relationships recognized by the Supreme Court. *Id*.

In their brief, the Plaintiffs do not identify any other basis for standing. Plaintiffs accordingly lack standing to sue.

For these reasons we vacate the judgment of the district court, and remand with instructions to dismiss.

————————————

**DISSENT**

————————————

COLE, Chief Judge, dissenting.  Ohio law effectively denies the vote to eligible voters who are arrested the weekend before Election Day—after the deadline for confined individuals to submit absentee ballots—and are not released in time to go to the polls to vote ("late-jailed voters").  In response to the laws at issue, plaintiff The AMOS Project ("AMOS"), a federation of 22 churches in the Cincinnati area that works to promote voter engagement, diverted its limited resources from its canvassing efforts towards providing additional training to its volunteers and to inform its members about the risks of being arrested during that period.  Because the laws being challenged here forced AMOS to redirect those resources, AMOS suffered a cognizable injury sufficient to confer Article III standing upon it to bring this action.

Under the "case or controversy" requirement of Article III of the United States Constitution, "a plaintiff in federal court must allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995) (citation and quotation marks omitted).  A plaintiff must therefore show "an actual or threatened injury, a causal connection between that injury and the defendant's conduct, and a likelihood that a court decision in the plaintiff's favor will redress the injury alleged."  *Id.*  A plaintiff "only need[s] to establish standing at the time that its complaint was filed."  *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 525 (6th Cir. 2001).

"An association or organization may assert standing in one of two ways:  (1) on its own behalf because it has suffered a palpable injury as a result of the defendants' actions; or (2) as the representative of its members."  *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332–33 (6th Cir. 2002).  An organization may have standing to sue if its interests are directly impaired, but a "mere interest in a problem" that is nothing more than "simply a setback to the organization's abstract social interests" will not suffice.  *Greater Cincinnati Coal. for the Homeless*, 56 F.3d at at 716 (citations omitted).  Here, AMOS asserts standing on its own behalf.

"The Supreme Court and this Circuit have found that a drain on an organization's resources . . . constitutes a concrete and demonstrable injury for standing purposes." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). As the Supreme Court explained, the expenditure or diversion of resources to counteract policies in conflict with an organization's goals "constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Thus, we have found a cognizable injury for standing purposes when an organization claimed that it "had to divert its resources, [and] its staff time and energy" in response to a defendant's unlawful actions. *Connor Grp.*, 725 F.3d at 576. Our sister circuits have similarly held that an organization suffers a concrete injury when, in response to a challenged election statute, it must spend more time or resources educating or redirecting personnel or voters in order to encourage voting. *See, e.g.*, *Fla State Conference of NAACP v. Browning*, 522 F.3d 1153, 1165–66 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (Posner, J.), *aff'd*, 553 U.S. 181 (2008).

In the case before us, two district judges found that AMOS was forced to turn its resources from its general canvassing efforts towards retraining its volunteers and members about the consequences of being arrested the weekend before Election Day due to the laws at issue. Consistent with our precedent and that of the Supreme Court, those judges concluded that AMOS suffered a "concrete and demonstrable injury" sufficient to establish standing. But although the majority has not determined that those judges clearly erred in their factual findings, *see Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002), it departs from the Supreme Court's instruction that a "drain on [an] organization's resources [] constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379. It also departs from our observation that "the standing requirement of an injury-in-fact is fairly lenient." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997). We have found that organizations suffer concrete injuries sufficient to confer standing when the defendants' alleged violations of the law "prevent these organizations from performing their daily operations." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 546 (6th Cir. 2004). That is precisely what happened here, yet the majority denies AMOS recourse from the laws that hinder its goal of promoting the right to vote.

The majority contends that AMOS is, in reality, impermissibly litigating the rights of third parties, i.e, potential late-jailed voters, but that is not so.  As discussed, AMOS has shown a real injury to itself, and standing doctrine affords it the opportunity to seek redress from the courts.  It does not matter that resolving its grievance would have the dual effect of affording the vote to late-jailed voters because, as the Supreme Court observed, "[t]he Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  So long as AMOS has a legitimate interest and ability to advance this litigation, whatever advantage the relief sought will confer on third parties is of no moment.

Nonetheless, AMOS may very well have standing to bring suit on behalf of its members, though it has not made this argument on appeal.  In *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004), we concluded that the plaintiff political parties and labor organizations had standing to assert the rights of their members in challenging state election regulations that they alleged could mistakenly cause their ballots not to be counted or prevent the members from voting at all.  Although the election had not yet occurred and the organizations "ha[d] not identified specific voters" who might suffer such harm, we observed that "this is understandable" because such issues "cannot be specifically identified in advance," but "[i]t is inevitable, however, that there will be such mistakes." *Id.* at 574.  We thus found that the organizations had standing to assert the rights of their members who would vote.  Similarly, it is likely that some eligible voters who are part of 10,000–15,000 person membership of AMOS will be late-jailed and, because of Ohio's current laws, be prevented from exercising their right to vote even though AMOS cannot know beforehand if any of its members might be arrested during the weekend before Election Day.  Just as the plaintiff organizations in *Blackwell* were found to have representational standing, so AMOS may succeed on this alternative ground as well.

The majority states, in *dicta*, that even if AMOS had Article III standing, it would not overcome the prudential limitation on standing to raise the rights of others.  Citing *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004), my colleagues note that AMOS does not have a "close relationship" with late-jailed voters such that an exception to the limitation applies.  But

*Kowalski* does not apply here because, as discussed above, AMOS has not argued that it "rest[s] [its] claim to relief on the legal rights or interests of third parties." *Id.* at 129 (quoting *Warth*, 422 U.S. at 499). Whether AMOS has prudential standing is not a question before us.

Because AMOS has suffered a cognizable injury sufficient to confer standing upon it to bring this action, and because I agree with the district court's conclusion with regard to the merits, I would affirm its judgment. I respectfully dissent.