13-694-cv
*Keeling v. Hars*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2014
No. 13-694-cv

JAIME KEELING,
*Plaintiff-Counter-Defendant-Appellee,*

v.

EVE HARS,
*Defendant-Appellant,*

NEW ROCK THEATER PRODUCTIONS, LLC, A NEW YORK LIMITED
LIABILITY COMPANY,
*Defendant-Counter-Claimant,*

ETHAN GARBER,
*Defendant.*[*]

Appeal from the United States District Court for the
Southern District of New York

No. 1:10-cv-9345—Thomas P. Griesa, *Judge*

---

[*] The Clerk of Court is directed to amend the official caption in this case
to conform with the above.

SUBMITTED: JUNE 26, 2015
DECIDED: OCTOBER 30, 2015

Before: CABRANES, LIVINGSTON, and DRONEY, *Circuit Judges*.

The primary question presented is whether an unauthorized work that makes "fair use" of its source material may itself be protected by copyright.

We hold, for substantially the reasons stated by the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), that, if the creator of an unauthorized work stays within the bounds of fair use and adds sufficient originality, she may claim protection under the Copyright Act, 17 U.S.C. § 103, for her original contributions. We also reject defendant's challenges to the District Court's jury charge. The District Court's January 11, 2013 judgment is therefore **AFFIRMED.**

> STEVEN PARADISE, Vinson & Elkins LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellee.*
>
> EVE HARS, *pro se*, Los Angeles, CA, *for Defendant-Appellant.*

JOSÉ A. CABRANES, *Circuit Judge:*

The primary question presented is whether an unauthorized work that makes "fair use" of its source material may itself be protected by copyright.

We hold, for substantially the reasons stated by the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), that, if the creator of an unauthorized work stays within the bounds of fair use and adds sufficient originality, she may claim protection under the Copyright Act, 17 U.S.C. § 103, for her original contributions. We also reject defendant's challenges to the District Court's jury charge. The District Court's January 11, 2013 judgment is therefore **AFFIRMED.**

## BACKGROUND

Plaintiff-Appellee Jaime Keeling is the author of *Point Break Live!* ("*PBL*"), a parody stage adaptation of the 1991 Hollywood action movie *Point Break*, starring Keanu Reeves and Patrick Swayze. In the film, Reeves plays a rookie FBI agent who goes undercover to infiltrate a gang of bank-robbing surfers led by Swayze's character. The Keeling-authored *PBL* parody parallels the characters and plot elements from *Point Break* and relies almost exclusively on selected dialogue from the screenplay. To this raw material, Keeling added jokes, props, exaggerated staging, and humorous theatrical devices to transform the dramatic plot and dialogue of the film into an

3

irreverent, interactive theatrical experience. For example, in Keeling's *PBL* parody, *Point Break*'s death-defying scene in which Reeves's character must pick up bricks, blindfolded, in a swimming pool takes place, instead, in a kiddie pool. Massive waves in the film are replaced by squirt guns in the *PBL* parody. A central conceit of the *PBL* parody is that the Keanu Reeves character is selected at random from the audience and reads his lines from cue cards, thereby lampooning Reeves's reputedly stilted performance in the movie. Keeling added to the effect that the audience was watching the making of the film by creating a set of film-production characters in the *PBL* parody, including a director, cinematographer, and production assistants. Keeling possesses no copyright or license with regard to the *Point Break* motion picture.

Defendant-Appellant Eve Hars, proceeding *pro se* on appeal, owns production company New Rock Theater Productions, LLC ("New Rock"). In 2007, Keeling executed a production agreement with Hars, pursuant to which New Rock would stage a two-month production run of *PBL* from October through December 2007. During that time period, Hars conferred with an entertainment attorney and the holder of the copyright to the Hollywood screenplay for *Point Break*, and eventually Hars came to believe that Keeling did not lawfully own any rights to the *PBL* parody play. Accordingly, after its initial two-month run, Hars sought to renegotiate the terms of the contract upon its expiration and, in effect, continue to produce *PBL* without further payment to Keeling. Keeling refused renegotiation, threatened suit, and registered a

4

copyright in *PBL*, without first obtaining permission from the copyright holders of the original *Point Break*. Keeling's asserted copyright in *PBL* became effective on January 4, 2008. Hars and New Rock continued to stage performances of *PBL* for four years thereafter without payment to or authorization from Keeling.

In December 2010, Keeling brought suit against Hars, New Rock, and New Rock investor Ethan Garber, asserting claims for copyright infringement, breach of contract, and tortious interference with contract. In the District Court proceedings, all parties were represented by counsel. After the District Court denied defendants' motion to dismiss, *see Keeling v. New Rock Theater Prods., LLC*, No. 10 Civ. 9345 (TPG), 2011 WL 1899762, at *1 (S.D.N.Y. May 17, 2011), defendants asserted counterclaims seeking, *inter alia*, a declaration that Keeling's *PBL* copyright registration was invalid. Upon completion of discovery, defendants moved for summary judgment, arguing primarily that *PBL*, an unauthorized derivative work, was not entitled to copyright protection as a matter of law. The District Court denied defendants' successive motions for summary judgment, ruling that a parody that makes "fair use" of another copyrighted work may contain sufficient originality to merit copyright protection itself. *See Keeling v. New Rock Theater Prods., LLC*, No. 10 Civ. 9345 (TPG), 2011 WL 6202796 (S.D.N.Y. Dec. 13, 2011); *Keeling v. New Rock Theater Prods., LLC*, No. 10 Civ. 9345 (TPG), 2012 WL 5974009 (S.D.N.Y. Nov. 29, 2012). The District Court also rejected defendants' argument that a script heavily reliant on theatrical devices, as was *PBL*'s, could not lawfully constitute

5

original creative expression deserving of copyright protection. 2011 WL 6202796 at *1. Finally, the Court found that multiple outstanding issues of material fact remained—including whether *PBL* constituted a "fair use" parody of *Point Break* and whether *PBL* contained sufficient originality to merit copyright protection. *Id.*

In December 2012, the case proceeded to a five-day trial by jury. At the close of the evidence, the parties delivered summations focused largely on whether *PBL* was a parody at all, and if so, whether that parody constituted non-infringing "fair use." Record on Appeal ("ROA"), *Keeling v. New Rock Theater Prods., LLC*, No. 10 Civ. 9345 (TPG) (GWG), Dkt. No. 98, at 567-648 (S.D.N.Y. Dec. 7, 2012). The District Court then charged the jury, beginning with the first question the jury would be asked to answer: "whether [*PBL*] was a fair use by way of a parody of the original movie Point Break." *Id.* at 652. The District Court declined to enumerate each of the four statutory factors pertaining to "fair use," opting instead to attempt to "put a little more content on the discussion," which the District Court believed that the "list of factors" alone lacked. *Id.* at 655. The pertinent instructions on fair use were as follows:

> Now, the person who creates the derivative work has a copyright in that derivative work. Now, if the derivative work is simply somehow really a copy of the original then it may be somehow called a derivative work but it infringes on the owner of the original. But if it is what we call "fair use" then it is not an infringement on the original and it is a new work and it has its own copyright and the author or

6

the creator of the new work owns that copyright as well as owns the new work. . . .

The plaintiff contends that [*PBL*] is a fair use of sections of the script of the original movie. The plaintiff contends that this is fair use as a parody and a parody, certainly, can be fair use. . . .

A proper parody is something which generally ridicules to some extent, makes fun of, makes light of the original. Suppose the original is the very serious drama of some kind and if someone comes along and makes a parody, it is generally turning it into something different, humorous, ridiculous. And if that is done it is fair use to use even substantial amounts of the script of the original movie. It is fair use to even use the high points or the high point as long as it is not simply conveying again the original movie. If it takes the script of the original movie and creates something which uses that script to ridicule to make fun of, to make light of to produce humor instead of the original seriousness, then that is a legitimate parody.

Now, the amount of script taken from the original cannot completely go beyond the needs of the parody. In other words, if the parody is for, if we could imagine, a third it is not legitimate to copy the other two thirds and put them out again. But if the amount of script used is reasonably related to the production of the humor, the ridicule, the lightheartedness and so forth that is a legitimate parody and that is fair use.

Now, it is sometimes said that the judge in instructing a jury on fair use is supposed to refer to a

list of factors. The list of factors is a list of factors without much content or meaning. And what I am trying do with you now is to refer to the necessary factors but I hope put a little more content on the discussion. And really that's all I have to say to define fair use by way of parody.

*Id.* at 653-55. No party objected to the District Court's jury instructions. *Id.* at 668.

The jury returned a verdict in Keeling's favor in the amount of $250,000, finding (a) that Keeling's use of material from the film *Point Break* was "fair use in the way of a parody," (b) that Keeling was the sole owner of the copyright to *PBL*, and (c) that defendants infringed Keeling's copyright. *Id.* at 675-77. The District Court entered judgment on January 11, 2013.

Defendant Hars, now proceeding *pro se*, appealed. She challenges the District Court's denial of her pretrial motion for summary judgment as well as the subsequent jury verdict in favor of Keeling.[1]

---

[1] Although Hars suggests in her reply brief that she does not in fact challenge the District Court's denial of her pretrial motion for summary judgment and instead appeals only "the pure legal issues raised" therein, *see* Def.'s Reply Br. 9, we treat her appeal, taken as a whole, as a challenge to the District Court's denial of summary judgment as well as the subsequent jury verdict.

8

## DISCUSSION

Though not a model of clarity,[2] Hars's appellate briefing primarily raises three issues: *first*, whether *PBL*, as an unauthorized "fair use," is entitled to copyright protection capable of supporting Keeling's claim of infringement by a third party; *second*, whether Keeling's contributions to the work—consisting of individually non-copyrightable elements—could be sufficient to support a copyright in *PBL*; and *third*, whether the District Court's jury instructions were erroneous. The first two issues relate to the same question: whether Keeling's work was copyrightable. We consider each issue in turn.

## I. Challenges to Copyright Law

In general, "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir. 2000) (internal quotation marks omitted). However, this rule does not apply where, as here, the district court's purported error was "purely one of law." *Id.* In such circumstances, we review *de novo* the legal issues underlying the district court's denial of summary judgment. *Id.*

---

[2] We construe the submissions of a *pro se* litigant liberally and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks omitted).

The Copyright Act principally offers copyright protection for "original works of authorship." 17 U.S.C. § 102(a). Pursuant to the statute's terms, authors may control the copying of their original works and also retain "the exclusive rights" to "prepare derivative works based upon the copyrighted work."[3] 17 U.S.C. § 106. Thus, *unauthorized* derivative works are typically afforded no copyright protection because they unlawfully infringe the exclusive rights of the original author. *Id.*; *see also id.* § 103 ("[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.").

The doctrine of "fair use" constitutes a critical and long-standing limitation on the exclusive rights of the original copyright owner.[4] Though only made a part of statutory copyright law in 1976, "[f]rom the infancy of copyright protection, some opportunity

---

[3] Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works" such as a translation, fictionalization, "or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. The definition further notes that such a work can consist of "editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." *Id.*

[4] *See generally Authors Guild v. Google, Inc.*, No. 13-4829-cv, -- F.3d --, 2015 WL 6079426, at *5 (2d Cir. Oct. 16, 2015) ("For nearly three hundred years, since shortly after the birth of copyright in England in 1710, courts have recognized that, in certain circumstances, giving authors *absolute* control over all copying from their works would tend in some circumstances to limit, rather than expand, public knowledge." (footnote omitted)); Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105 (1990) (discussing the doctrine of fair use within the context of the history and objectives of copyright law).

10

for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, 'to promote the Progress of Science and useful Arts.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (alterations omitted) (quoting U.S. CONST., Art. I, § 8, cl. 8). Under Section 107 of the Copyright Act, certain unauthorized "fair use of a copyrighted work," for purposes such as criticism, comment, news reporting, teaching, scholarship and research, "is not an infringement of copyright" and thus is lawful.[5] 17 U.S.C. § 107. While parody is not expressly mentioned in the statute, the Supreme Court has instructed that "parody, like other comment or criticism, may claim fair use under § 107." *Campbell*, 510 U.S. at 579.

In this case, Hars does not dispute the jury's factual determination that Keeling's use of *Point Break* material in her creation of *PBL* was "fair use in the way of a parody." ROA, Dkt. No. 98, at 675. Indeed, she repeatedly disclaims any "fair use" challenge, explaining that she "is not concerned about whether Keeling's script is a fair use of Point Break because it is completely irrelevant to any and all of Hars' arguments." Def.'s Reply Br. 20; *see also id.* at 20-21 ("[T]he issue of whether Keeling's script qualifies as fair use was astutely and consciously avoided by Hars in her brief.

---

[5] The Copyright Act lists four non-exhaustive factors for courts to consider in determining whether a use is "fair": "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

. . . Hars is not asking the Court to spend even one second of valuable time trying to determine whether Keeling's script qualifies for fair use.").

Instead, Hars presents two legal arguments for why copyright protection should not extend to Keeling's work, both of which were first raised in defendants' summary judgment briefing and denied by the District Court.

## A. Copyright Protection: Fair Use

First, Hars argues that an unauthorized derivative work like *PBL* categorically may not receive independent copyright protection, regardless of whether it makes fair use of its source material.[6] This argument flows from the admittedly unusual posture in which this case arises. Typically, fair use is invoked as a *defense* against a claim of copyright infringement brought by the source-material

---

[6] Both parties characterize *PBL* as a "derivative work." *See* Def.'s Br. 1-3, 9-18, 27-40, 45-51; Pl.'s Br. 1, 9, 21-32. We note that, as a general matter, "derivative works" and "fair use" are discrete legal categories. Under the Copyright Act, a derivative work involves a transformation to the work's "form," 17 U.S.C. § 101, while fair use involves a transformation of the work's "purpose and character," 17 U.S.C. § 107. *PBL* is both—it involves the dramatization of a motion picture, making it a derivative work, and it involves a transformation of the motion picture's character from serious to parody, making it non-infringing fair use. The parties here seem to confuse the distinction between derivative works and fair use. Nonetheless, because neither party has raised this issue on appeal, and because our analysis applies equally to derivative and non-derivative works so long as the work constitutes lawful fair use, we need not further address questions raised by the parties' characterization.

rightsholder. Here, however, Keeling invoked the fair-use principle to establish an *affirmative claim* against defendants for unauthorized use of her *PBL* parody. Hars concedes that Keeling could use the "fair use" doctrine as a "shield" against a claim of copyright infringement, but argues that she may not use the doctrine as a "sword" to vest a work with independent copyright protection against third-party infringement. Def.'s Br. 13-14.

This argument is inconsistent with the operative statutory language. The Copyright Act provides that derivative works are entitled to "independent" copyright protection, separate from any copyright in the preexisting material. 17 U.S.C. § 103(b). Though copyright protection expressly may extend to derivative works "employing preexisting material in which copyright subsists," the statute cautions that protection "does *not* extend to any part of the work in which such material has been used *unlawfully*." 17 U.S.C. § 103(a) (emphases supplied). If, however, a work employs preexisting copyrighted material *lawfully*—as in the case of a "fair use"—nothing in the statute prohibits the extension of the "independent" copyright protection promised by Section 103.[7] *Id.* § 103(b). A close reading of the statute therefore makes plain that an unauthorized but lawful fair use employing preexisting copyrighted

---

[7] To be sure, the independent copyright protection in the new work is limited to that work's original content: "[C]opyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b).

material may itself merit copyright protection. It is not the invocation of fair use that provides the work copyright protection, and perhaps thinking so has created some confusion on the part of the defendant. It is the originality of the derivative work that makes it protectable, and fair use serves only to render lawful the derivative work, such that it may acquire—as would other lawful derivative works—such protection.

Resisting this statutory principle, Hars argues that the case law does not permit the extension of independent copyright protection to an unauthorized fair use, and contends that the only court to have dealt with the issue found that "Congress did not contemplate such" a result. Def.'s Br. 14 (quoting *Sobhani v. @Radical.Media, Inc.*, 257 F. Supp. 2d 1234, 1239 (C.D. Cal. 2003)). But in fact, Congress *did* expressly contemplate the extension of copyright protection where, as here, a work constituted non-infringing fair use. The relevant legislative report stated that,

> [u]nder this provision [(*i.e.*, Section 103(a) of the Copyright Act)], copyright could be obtained as long as the use of the preexisting work was not "unlawful," even though the consent of the copyright owner had not been obtained. For instance, *the unauthorized reproduction of a work might be "lawful" under the doctrine of fair use* or an applicable foreign law, *and if so the work incorporating it could be copyrighted*.

H.R. Rep. No. 94-1476, at 58 (1976) (emphases supplied). This language addresses precisely the issue raised in the instant appeal.

14

Although "the consent of the copyright owner"—here, the rightsholder in the Hollywood screenplay *Point Break*—"had not been obtained" by Keeling, her resulting parody *PBL* was "'lawful' under the doctrine of fair use," and accordingly, it "could be copyrighted."

We have previously confirmed that, because "[d]erivative works are explicitly included in the subject matter of copyright as defined by the Copyright Act," the mere fact that a litigant's unauthorized "creations are derivative works is in itself, of course, no bar to copyrightability." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980) (citing 17 U.S.C. § 103). And this statutory interpretation is consistent with the animating policy behind the fair use doctrine—to fulfill copyright's core purpose of promoting development in arts and science. *See Campbell*, 510 U.S. at 575. Without any possibility of copyright protection against infringement for her original fair-use parody, playwrights like Keeling might be dissuaded from creating at all.

Accordingly, we agree with the District Court's holding that, when a derivative work's unauthorized use of preexisting material is fair use and the work contains sufficient originality, its author may claim copyright protection under § 103 for her original creative contributions. *See Keeling*, 2011 WL 1899762, at *1.

## B. Copyright Protection: Selection, Coordination, and Arrangement of Un-Protectable Elements

Hars's second legal argument fares no better. Hars contends that if an author's original contributions to a derivative work consist solely of non-copyrightable individual elements, those contributions cannot support a copyright. Specifically, she claims that Keeling's original contributions to the *PBL* script are insufficient to warrant copyright protection because they consist entirely of non-copyrightable stage directions and theatrical devices. *See* 17 U.S.C. § 102(b) (providing that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work").

We disagree. As the District Court properly found, copyright law protects not only the individual elements themselves, but the creative choices made in selecting and arranging even un-copyrightable elements. Indeed, the Copyright Act itself explicitly protects "compilations," 17 U.S.C. § 103, and a long line of case law confirms that copyright covers compilations of raw data or facts, elements which are not themselves protectable, so long as the compilation itself (including the arrangement of those elements) possesses some "minimal degree" of creativity, "no matter how crude, humble or obvious." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (internal quotation marks omitted); *see also Harper & Row v. Nation Enters.*, 471 U.S. 539, 547 (1985) ("Creation of a nonfiction work, even a compilation of pure fact, entails

16

originality."); *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 80 (2d Cir. 2004) ("It is well settled that compilations of fact may be copyrightable even though facts themselves are not protected"). The Supreme Court has made clear that even a *telephone directory* may be copyrighted if its non-copyrightable factual elements are arranged with the requisite "minimal degree" of originality. *See Feist*, 499 U.S. 340. Keeling's original contributions to *PBL* clearly exceed this creativity threshold.[8]

To be sure, Hars is correct that Keeling could not copyright the commonly used individual stage directions and theatrical devices—*e.g.*, the concept of drafting an audience member to play the lead, the reliance on cue cards, or the use of squirt guns—which together comprise *PBL*'s jokes. But Keeling has never sought to do so. Rather, as the District Court correctly held, "Keeling's creative

---

[8] We similarly reject Hars's related argument that *Point Break* material improperly "pervade[s]" the *PBL* script in contravention of *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), *superseded by rule on other grounds as recognized in Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 84 (2d Cir. 2013). *See* Def.'s Br. 35-37. To the extent it even applies in this case, which is uncertain, *Eden Toys* requires merely "some substantial, not merely trivial, originality" to meet the standard for sufficient originality. 697 F.2d at 34 (internal quotation marks omitted). *PBL*'s transformative parody fulfills this standard, and its use of a substantial portion of the underlying work presents no hindrance to findings of either fair use or originality. *Cf. Campbell*, 510 U.S. at 588 ("When parody takes aim at a particular original work, the parody must be able to conjure up at least enough of that original to make the object of its critical wit recognizable." (internal quotation marks omitted)); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (holding that even the use of an entire original work may be permissible fair use, so long as the use is "tailored to further [the new work's] transformative purpose").

contribution, and thus her copyright, is in the original way in which [she] has selected, coordinated, and arranged the elements of . . . her work" to create new parodic meaning. *Keeling v. New Rock Theater Prods., LLC*, No. 10 Civ. 9345 (TPG), 2013 WL 918553, at \*2 (S.D.N.Y. Mar. 11, 2013) (internal quotation marks omitted) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995)).

Hars's legal challenges to the jury's infringement verdict thus fail.

## II. Challenges to Jury Instructions

We now turn to Hars's challenges to the District Court's jury instructions. Because Hars failed to object to the charge at trial, we review these claims for "plain error," and will only grant relief if there was "(1) error, (2) that is plain, (3) that affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Weintraub*, 273 F.3d 139, 145 (2d Cir. 2001) (alterations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."). "A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Hathaway v. Coughlin*, 99 F.3d 550, 552 (2d Cir. 1996). Conversely, "a jury instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to

18

it." *Id.* at 553 (internal quotation marks omitted). We have previously observed that the plain-error exception to Rule 51's objection requirement "should only be invoked with extreme caution in the civil context." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996)). "To constitute plain error, a court's action must contravene an established rule of law, and go to the very essence of the case." *Id.* (alterations, citation, and internal quotation marks omitted) (quoting *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).

Hars contends that the jury instructions were erroneous in two respects: *first*, she argues that the District Court improperly excused Keeling from proving that her original contributions to the *PBL* script were sufficient to merit copyright protection; and *second*, she argues that the District Court failed to enumerate the four statutory "fair use" factors in its instructions to the jury. Neither constitutes plain error.

## A. Originality Instruction

In her first challenge to the jury charge, Hars argues that the District Court failed to charge the jury that "[o]riginality is a constitutional requirement" and is the "*sine qua non* of copyright." *Feist*, 499 U.S. at 345-46; *see* Def.'s Br. 27. Hars points out that the District Court never provided a separate instruction on originality to the jury. Hars also contends that the District Court misrepresented

the governing law by suggesting that a finding of fair use would automatically entitle *PBL* to copyright protection. Hars characterizes this position as the "fair use = copyright" equation, and attacks the equation for implicitly excusing Keeling from offering the necessary proof of her original, protectable contributions. Def.'s Br. 9-15.

Admittedly, the District Court did not offer a discrete, explicit instruction on the requirement of originality. Instead, it collapsed aspects of both fair use and originality into a single set of instructions. The charge did, however, sufficiently instruct the jury on the originality requirement to survive plain error review. In its explanation of fair use, the District Court distinguished between an infringing "copy of the original" and a non-infringing "new work." ROA, Dkt. No. 98, at 653. The Court went on to explain the kind of originality required for a "fair use" parody to merit "its own copyright" protection:

> A proper parody is something which generally ridicules to some extent, makes fun of, makes light of the original. Suppose the original is the very serious drama of some kind and if someone comes along and makes a parody, it is generally turning it into something different, humorous, ridiculous. And if that is done it is fair use to use even substantial amounts of the script of the original movie. It is fair use to even use the high points or the high point as long as it is not simply conveying again the original movie. If it takes the script of the original movie and creates something which uses that script to ridicule

20

to make fun of, to make light of to produce humor instead of the original seriousness, then that is a legitimate parody.

*Id.* at 654-55. Without using the word "originality," the District Court thus indicated that a protectable fair use must be "new," must "turn[ ] [the original material] into something different," and must avoid "simply conveying again the original" material. *Id.*

These jury instructions adequately trace the law of fair use and, more specifically, the underlying concepts of transformative purpose and character, which are acknowledged to be "[t]he heart of the fair use inquiry" in general, *On Davis v. Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001), and "the heart of any parodist's claim" in particular, *Campbell*, 510 U.S. at 580. *See also Blanch v. Koons*, 467 F.3d 244, 251-52 (2d Cir. 2006) (a new work is transformative when it transforms the "raw material" of the underlying work "in the creation of new information, new aesthetics, new insights and understandings" (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 142 (2d Cir. 1998))).

It would arguably have been preferable for the District Court to deliver separate instructions on fair use and originality. Nevertheless, its combination of these elements into one instruction does not "contravene an established rule of law." *Rasanen*, 723 F.3d at 333. Even if this combination was error, we would still not conclude that it affected Hars's substantial rights. "[T]aken as a whole," the charge was legally "correct," alerted the jury to the issue of originality, and "sufficiently cover[ed] the case so that a jury

21

[could] intelligently determine the questions presented to it." *Hathaway*, 99 F.3d at 553 (internal quotation marks omitted). Proceeding with the requisite "extreme caution in the civil context," *Rasanen*, 723 F.3d at 333, we hold that the District Court did not plainly err in delivering its originality instruction.

## B. Statutory Factors Instruction

We likewise reject Hars's challenge to the District Court's failure to explicitly enumerate in its instructions all four of the fair-use factors listed in 17 U.S.C. § 107.

As a legal matter, the four factors do not each carry equal weight in an evaluation of parody as fair use; indeed, some may not be relevant at all. As noted, the first factor—"the purpose and character of the use," 17 U.S.C. § 107—lies at the "heart of the inquiry" for parody, while the other three factors are much less important.[9] Indeed, as the Supreme Court has instructed, "the more

---

[9] *See Campbell*, 510 U.S. at 586 (the second factor—the nature of the original copyrighted work—"is not . . . ever likely to help much in separating the fair use sheep from the infringing goats in a parody case, since parodies almost invariably copy publicly known, expressive works"); *id.* at 588 (the third factor—the amount and substantiality of the portion of the original work used—is less important, as "parody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable"); *id.* at 591 (as to the fourth factor—the effect on the market for or value of the original copyrighted work—"it is more likely that [a parody] will not affect the market for the original in a way cognizable under this factor, that is, by acting as a substitute for it . . . [,] because the parody and the original usually serve different market functions"). *See also Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998)

transformative the new work [under factor one], the less will be the significance of other factors . . . that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.

In line with this hierarchy of significance, the District Court's fair-use charge emphasized the question of transformative use under the first statutory factor. The Court mentioned the third factor only briefly ("the amount of script taken from the original cannot completely go beyond the needs of the parody," ROA, Dkt. No. 98, at 655), and did not refer to the second and fourth factors at all. We find its stated rationale—the desire to "put a little more content on the discussion," which the "list of factors" alone lacked, *id*.—to be understandable, if not advisable. The safer course is for the trial judge to explain the application of all four factors, however briefly, based on the circumstances presented.

Nonetheless, even if we assumed that the failure to describe all four factors was error, this error did not affect Hars's substantial rights. In order to show plain error affecting "substantial rights," a litigant must typically show that the error was "prejudicial: It must have affected the outcome of the district court proceedings." *Bennett v. United States*, 663 F.3d 71, 88 (2d Cir. 2011) (emphasis and internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Hars presented no evidence that would tend to support a different verdict on "fair use," even if the District Court

("[T]he third factor [has] little, if any, weight against fair use so long as the first and fourth factors favor the parodist.").

23

had covered the four factors in detail. On the contrary, Hars herself effectively concedes this point by disclaiming any challenge to a finding of fair use. *See* Def.'s Reply Br. 20 ("[A]t no time did Hars even imply, never mind *argue*, that Keeling's script was not fair use of *Point Break*." (emphasis in original)). Without a showing of prejudice to Hars's substantial rights, her challenge to the jury instructions on fair use necessarily fails.

## CONCLUSION

To summarize, we hold that:

(1) the author of an unauthorized fair use exhibiting sufficient originality may claim independent copyright protection under the Copyright Act, 17 U.S.C. § 103, against infringement for the original creative contributions therein;

(2) copyright protection may extend to a work that exhibits the sufficient minimal degree of originality in selecting, coordinating, and arranging otherwise un-protectable underlying elements; and

(3) the District Court did not err in delivering its jury instructions on originality and fair use.

Having rejected each of defendant Hars's arguments, we **AFFIRM** the District Court's January 11, 2013 judgment in its entirety.