RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HILLER, LLC,

> *Plaintiff-Appellee*,

*v.*

No. 19-6115

SUCCESS GROUP INTERNATIONAL LEARNING ALLIANCE,
LLC, et al.,

> *Defendants*,

CLOCKWORK IP, LLC,

> *Intervenor-Appellant*.

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cv-00743—Jon Phipps McCalla, District Judge.

Argued: August 6, 2020

Decided and Filed: September 23, 2020

Before: SUHRHEINRICH, GIBBONS, and BUSH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Brad R. Newberg, MCGUIRE WOODS LLP, Tysons, Virginia, for Appellant. Jeffrey J. Catalano, FREEBORN & PETERS LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Brad R. Newberg, MCGUIRE WOODS LLP, Tysons, Virginia, Lucy Jewett Wheatley, Brian D. Schmalzbach, MCGUIRE WOODS LLP, Richmond, Virginia, for Appellant. Jeffrey J. Catalano, FREEBORN & PETERS LLP, Chicago, Illinois, Jason P. Stearns, FREEBORN & PETERS LLP, Tampa, Florida, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.   Appellant Clockwork IP, LLC intervened in this copyright case to claim that it—not the plaintiff and registered copyright holder Hiller, LLC[1]— owned the allegedly-infringed work, a customer-service training guide for HVAC technicians (the Guide).   The jury rejected Clockwork's sole request for relief: a declaration invalidating Hiller's copyright in the Guide.

Clockwork makes two arguments on appeal.[2]   First, Clockwork contends that the district court erred by denying its motion for judgment as a matter of law because no reasonable juror could have found that Hiller owns a copyright in any part of the Guide.   Second, Clockwork asserts that the district court improperly instructed the jury that Hiller could hold a copyright in the Guide, even though it contained Clockwork-copyrighted material, so long as that material did not "pervade[] the entire work."

Clockwork is wrong on both points.   The jury reasonably concluded that Hiller created enough original material to gain copyright protection,[3] and the district judge correctly instructed the jury that the Guide's incorporation of some Clockwork-copyrighted content did not invalidate Hiller's copyright in the Guide's original parts.   We affirm.

## I. BACKGROUND

Hiller, LLC provides plumbing, heating, cooling and electrical services (referred to collectively as home services) to residential and commercial customers.   Jimmy Hiller, Sr. began his career as a plumber's apprentice and founded Hiller as a one-man operation in 1990.   Hiller

---

[1]Hiller, LLC is distinct from its owner, Jimmy Hiller, Sr.  All uses of "Hiller" in this opinion refer to the LLC, not to Mr. Hiller.

[2]The defendant in the action below, Success Group International, also appealed, but later settled its dispute with Hiller and voluntarily dismissed its appeal before the briefing stage.

[3]As discussed below, Hiller's copyright may not cover everything in the Guide, but we have not been asked to define the scope of Hiller's copyright, only to review the jury's conclusion that it exists.

grew to be the largest home-services company in Tennessee, employing roughly 400 service technicians.

In 1999, Hiller began paying a monthly fee to be a "member" of Success Group International, an organization that offers management advice and customer-service training to home-services companies. At that time, a company called Clockwork Home Services, Inc. owned Success Group, and Success Group conducted training courses using manuals copyrighted by Clockwork (the Manuals). Hiller sent its employees to those courses, and they had access to the Manuals.

In 2014, Clockwork (by that time operating as Clockwork IP, LLC) sold Success Group to a collection of investors doing business as Aquila Investment Group, LLC. Rebecca Cassel (a former Clockwork employee) led Aquila's efforts, and she convinced Jimmy Hiller, Sr. to invest in Aquila as well. As a part of the transaction, Clockwork retained ownership of the copyrights in the Manuals but granted Aquila a perpetual license to use the Manuals in the normal course of Success Group's training business.

In March of 2015, Hiller hired a company called the Bob Pike Group to create the Guide. Hiller planned to use the Guide (instead of the Manuals) to train its technicians how to conduct a service appointment (referred to in the industry as a call). Jimmy Hiller, Sr. hoped that Pike could design training materials that were "more interactive" and "more engaging" than the Manuals.

Pike had no expertise in the home-services industry, so it could not create the Guide without first learning the practices that Hiller wanted to teach its employees. To do so, Pike conducted a two-day workshop designed to elicit Hiller's goals, its "metrics for success," and the "behaviors required to achieve these metrics." Pike employee Vicki Lind and a Pike subcontractor named Janice Horne led the workshop. Jimmy Hiller, Sr., Hiller's director of training Mitch Mobley, and other Hiller employees attended the meeting on behalf of Hiller. Rebecca Cassel attended on behalf of Aquila and Success Group. The workshop participants referred to at least one of the Manuals for ideas during the workshop.

Horne began by asking the participants to brainstorm the objectives of the Guide, including the techniques that make up a successful service call. They wrote their ideas on 4x6 notecards, and then, as a group, "decided what to leave in, what to cross off, and the most important concepts." The group then organized the behaviors under discrete headings, which became a "roadmap" for the project. Someone took pictures of the arrangement of notecards, and, from those pictures, Pike created an outline for the Guide.

Based on that outline, Horne constructed the Guide. The Guide is 117 pages long. Its first section, "Need to Know" sets out the six steps to a successful service call: (1) prepare for the call, (2) set the tone, (3) diagnose issue, (4) get approval, (5) do the work, and (6) close. The second section, "Nice to Know," contains a glossary of industry terms, "sample scripting" for typical interactions with customers, and technical diagrams about whether to repair or replace an appliance.

For some passages of the Guide, Horne simply incorporated content generated at the design workshop. For example, in the "prepare for the call" section, Horne listed four steps: (1) prepare self, (2) prepare truck, (3) review service history, and (4) confirm directions. These headings correspond closely to a list created at the design workshop.

For other sections, Horne asked Hiller for content to fill the gaps left after the design workshop. In August of 2015, for example, Horne asked Hiller for a "[l]ist of 10-12 words (or phrases) to <u>lose</u> and what [the technicians] should <u>use</u> instead." In October, she asked for examples of "objections that would be typical coming from the customer" and "[e]xamples of Sincere [sic] compliments." Some of this gap-filling content was taken directly from the Manuals. For example, much of the "sample scripting" is lifted word-for-word. In addition, the Guide includes a graphic meant to juxtapose the cost of keeping a current appliance with the cost of replacing it instead. That graphic was taken from the Manuals.

Horne also added original text in the Guide's section regarding communication skills. For example, the Guide contains a graphic describing four personality types and their corresponding traits. Horne created that passage based on her knowledge of "DISC," which is "a personality profile that's common in the work world."

When Horne completed the textual content of the Guide, one of Pike's graphic designers added pictures and made final revisions to the formatting and layout. Pike delivered the final version of the Guide in December of 2015 and later assigned its copyright in the Guide to Hiller.

The events giving rise to this lawsuit occurred not long after completion of the Guide. In January of 2016, Success Group (led by Rebecca Cassell) conducted a class called "Service Essentials" using a workbook that closely resembled the Guide. In June of 2016, Hiller ended its Success Group membership, and Jimmy Hiller, Sr. sold his shares in Aquila. In July, Hiller's attorneys demanded that Success Group stop using the Service Essentials workbook. In March of 2017, Hiller registered its copyright in the Guide, and in April Hiller sued Success Group and Rebecca Cassel for copyright infringement. In December of 2017, Clockwork moved to intervene in the case, alleging that "Clockwork . . . is the owner of the intellectual property that Hiller claims has been infringed by Defendants Success Group International Learning Alliance, LLC . . . and Rebecca Cassel" and seeking declaratory relief to that effect. The district court granted Clockwork's motion to intervene.

The district court conducted a jury trial over the course of seven days in March of 2019. The jury heard testimony from (among others) Jimmy Hiller, Sr., Rebecca Cassel, Janice Horne, and Clockwork's vice president of training, Lance Sinclair. The jury reviewed the Guide, the Manuals, and the allegedly infringing Success Group workbook. The jury concluded that Hiller had a valid copyright in the Guide and that the Success Group workbook copied protected elements of the Guide. The jury rejected Clockwork's request for declaratory relief invalidating Hiller's copyright. Clockwork moved for a judgment notwithstanding the verdict, which the district court denied.

## II. ANALYSIS

A.     **Sufficient evidence supports the jury's verdict that Hiller owns a copyright in the Guide.**

Clockwork argues that the district court should have granted its motion for judgment as a matter of law, which sought a declaration that Hiller does not own a copyright in any part of the Guide. That argument is two-pronged. First, Clockwork asserts that the Guide lacks

independently created material, which is required to meet the Copyright Act's originality requirement. Second, Clockwork contends that Hiller should lose its copyright because the Guide contains content taken from the Manuals.

### 1.    Standard of Review

To prevail in its challenge to the district court's denial of its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), Clockwork must establish that, viewing the evidence in the light most favorable to Hiller, reasonable minds could "come to but one conclusion" in Clockwork's favor. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

### 2.    The jury reasonably determined that the Guide contains enough originality to establish copyright protection.

Clockwork argues that the Guide lacks the originality necessary to confer a copyright. As discussed below, the jury could reasonably have found that the Guide contains enough originality in its selection and organization to meet the originality threshold for copyright protection.

"To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547–549 (1985)). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* Even a work that contains "no protectable written expression . . . meets the constitutional minimum for copyright protection if it features an original selection or arrangement." *Id.* at 348 (citing *Harper & Row*, 471 U.S. at 547).

The Guide contains original material (i.e., content created independently by or on behalf of Hiller). For example, page 11 of the Guide features a graphic depiction of the six steps that Hiller wants its technicians to follow:



The man in the picture frame represents the first step, "Prepare for the Call."  The next five steps are depicted by corresponding pictures in a clockwise orientation arranged around a ship's wheel that is crossed by the label "Communication."  Janice Horne and Pike's graphic designer Sandy DuFault chose these images to represent the six-step process identified during the two-day design workshop that Pike conducted for Hiller.

Likewise, page 15 of the Guide offers four steps meant to help the technician "Prepare for the Call."  The four steps are: "Prepare Self," "Prepare Truck," "Review Service History," and "Confirm Directions."  Under "Prepare Self," the Guide lists two subcomponent steps and one blank space for notes.  Under "Prepare Truck" is the following fill-in-the-blank exercise:

**Prepare Truck**

- Clean
  - _____ dash
  - Organized
  - Washed
- Replace truck _____

Under "Review Service History" are seven blank spaces with a two-column heading labelled "What?" and "Why?"  Under "Confirm Directions" are three blank spaces for notes.  Similarly, page 37 of the Guide provides three steps that will help the technician "Set the Tone," with each

step including some combination of subcomponent steps, fill-in-the-blank sentences, and empty spaces for notes. Again, Janice Horne and Sandy DuFault created these graphic depictions based on information selected and organized at the design workshop.

Taken together, the Guide's choices regarding selection and organization meet the originality threshold for copyright protection. *See Feist*, 499 U.S. at 345. These choices are "creative" in the sense that they show inventiveness and imagination. *See Creative*, OXFORD ENGLISH DICTIONARY (3d ed. 2010). And these elements were "independently created" on behalf of Hiller by Janice Horne and Sandy DuFault. *See Feist*, 499 U.S. at 345.

For those reasons, the jury reasonably concluded that Hiller owns a valid copyright with respect to the Guide, which would extend copyright protection to any original parts of the Guide that did not incorporate copyright-protected elements of the Manuals.

> **3.    The jury reasonably concluded that Hiller's copyright covers original portions of the Guide, even if other portions of the Guide were authored by Clockwork.**

Clockwork asserts that Hiller cannot own a copyright in the Guide because the Guide incorporated content from Clockwork's Manuals. However, for the reasons below, the jury could reasonably have found that, although the Guide contains content taken from the Manuals, Hiller nevertheless holds a copyright in the parts of the Guide that do not copy from the Manuals.

As the district court instructed the jury, "[c]opyright protection does not extend to all the elements of a copyrighted work." The "non-covered elements" that fall outside of copyright protection include "a[ny] portion of the work that is not original to the author." *Id.*; *see* 17 U.S.C. § 103(b) ("The copyright in [preexisting material] extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work."). Based on that standard, the district court asked the jury to determine whether Success Group "copied the protected components of the [Guide]." As to Clockwork's claim, the jury was only asked to determine whether Clockwork had "proven by a preponderance of the evidence that it [i.e., Clockwork] owns the copyright of the Technician Guide [i.e., the Guide]."

Applying those instructions, the jury reasonably found that Hiller maintained a valid copyright in the Guide, which would extend copyright protection to the Guide's original content (for example, the original passages described in the previous section) but would not cover the content taken from the Manuals.[4]

Clockwork argues that Hiller's unauthorized incorporation of Clockwork-copyrighted material should completely invalidate Hiller's copyright in the Guide. Clockwork bases that argument on the section of the Copyright Act that grants an author the exclusive right to create derivative works. *See* 17 U.S.C. § 106(2) ("[T]he owner of copyright has the exclusive right[] . . . to prepare derivative works based upon the copyrighted work."). A derivative work is one that is "based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation." § 101.

However, even if the jury determined that the Guide is a derivative work,[5] Hiller would still retain its copyright in any discrete parts of the Guide that were not copied from the Manuals. *See* § 103(a) ("[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any *part* of the work in which such material has been used unlawfully." (emphasis added)).

Clockwork asserts that Hiller should lose all copyright protection because the entire Guide is based on Clockwork's "copyrighted system." However, as the jury was instructed, "[c]opyright law does not give an author the right to prevent others from copying or using the underlying ideas contained in the author's work, such as procedures, processes, systems,

---

[4]Because Success Group settled with Hiller and dropped its appeal, we will not parse the Guide to decide precisely what parts are copyright protected.

[5]The jury had strong reasons to find that the Guide is not a derivative work, even if the Guide was based on the same system described by the Manuals. When a work is based on unprotected elements of a prior work (such as the underlying idea or system), it is not derivative of that work. *See* 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 3.01(Matthew Bender, Rev. Ed. 2020) ("Th[e] reference to 'preexisting works' [in the definition of derivative work], as compared with the reference to 'preexisting materials' in the coordinate definition of a 'compilation' implies that a derivative work, unlike a compilation, must incorporate that which itself is the subject of copyright."); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1080 (9th Cir. 2000) (holding that a photograph of a vodka bottle was not derivative of the bottle because the design of the bottle was a "utilitarian object that cannot be copyrighted").

methods of operation, concepts, principles, or discoveries." *Accord* § 102 ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Many of the similarities between the Guide and the Manuals—such as advising technicians to "park on the street," establish "eye contact," wear "shoe covers," and use "premium tools"—are not protectable under copyright law, either because they are short phrases, *see* 37 C.F.R. § 202.1, or because the underlying ideas are "merged" with their expression, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004) (noting that under the merger doctrine, "[w]here the 'expression is essential to the statement of the idea,' or where there is only one way or very few ways of expressing the idea, . . . copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well." (internal citations omitted) (quoting *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994)) (citing *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1519 n.27 (11th Cir. 1997); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993))).

Accordingly, the jury reasonably concluded that Hiller had copyright protection over any original parts of the Guide that did not incorporate copyright-protected content from the Manuals.

**B.  The district court's jury instructions correctly apply the law to this case.**

Clockwork alternatively seeks a new trial based on the district court's instruction to the jury that "[a] copyright is invalid where unauthorized preexisting material pervades the entire work or [the work] is inextricably intertwined with the preexisting material," which according to Clockwork might have resulted in a verdict "based on a non-viable legal theory." Clockwork argues that the author of an unauthorized derivative work forfeits all copyright protection in the work, regardless of whether preexisting material "pervades" it.

### 1.     Standard of Review

To be granted a new trial based on allegedly erroneous jury instructions, Clockwork must show that the "instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998).

### 2.     The district court properly instructed the jury that Hiller would completely lose its copyright in the Guide only if unauthorized Clockwork material "pervaded" the Guide.

Clockwork asserts that the district court erred by instructing the jury that "[w]here use of unauthorized preexisting material pervades the entire work . . . , copyright protection may not be granted."

That instruction correctly follows directly from two sections of the Copyright Act. First, section 106 gives the author of an original work the exclusive right to create new works that are derivative of (i.e. "based on") that work. 17 U.S.C. § 106(2). Accordingly, when a person creates a derivative work without the original author's permission, that person has unlawfully used the original work. Second, section 103 provides that a work can be copyrighted even if it unlawfully incorporates preexisting material, but protection for such a work "does not extend to any part of the work in which such material has been used unlawfully." § 103(a). The district court's "pervades" instruction is a logical corollary of these two principles: Hiller would lose all copyright protection in the Guide only if content from Clockwork's Manuals ran throughout every "part" of the Guide, or in other words "pervaded" it.

In most cases regarding derivative works, that instruction would be unnecessary because the determination that a work is derivative would necessarily imply that the preexisting work "pervades" the derivative. *See Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (finding that an original work (the graphic symbol used by the artist Prince) "clearly 'pervade[d]'" two derivative works (guitars that were shaped like that symbol) and noting that "[i]f it did not, the guitars might not be derivative works"). That is, in most cases, a work that "adapts" or "recasts"

another work without permission would contain no discrete "parts" that did not unlawfully use the original work.[6]

However, because the Guide contains discrete parts, some of which are clearly not based on protected elements the Manuals, the district court properly instructed the jury that it could find that Hiller maintained a copyright in some parts of the Guide even if other parts copied from the Manuals without authorization.[7]

For these reasons, we affirm.

---

[6]Clockwork relies on other cases involving derivatives that, like the guitar in *Pickett*, obviously are pervaded by the original work. *See Keeling v. Hars*, 809 F.3d 43 (2d Cir. 2015) (live-action parody of the movie *Point Break*); *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1013 (9th Cir. 2012) (updated version of a software program).

[7]Clockwork also argues that the district court erred by allowing the jury to find that Hiller had authorization to incorporate content from the Manuals. However, because the jury could reasonably have found that Hiller had a copyright in the original parts of the Guide even if it lacked authorization to incorporate content from the Manuals, any such error would have been harmless.